**UNITED STATES of America, Appellee,**

v.

**Henry Francis KELLEY, Defendant,
Appellant.**

**No. 83–1007.**

United States Court of Appeals,
First Circuit.

Argued May 2, 1983.

Decided July 25, 1983.

Elliot M. Weinstein, Peabody, Mass., for defendant, appellant.

John C. Doherty, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and RE,* Chief Judge.

RE, Chief Judge.

Appellant, Henry Francis Kelley, was convicted of various firearms violations in a non-jury trial before Judge A. David Mazzone of the United States District Court for the District of Massachusetts. He appeals from the denial of his motions 1) to Vacate Judgment and Sentence, and for a New Trial, and 2) that Judge Mazzone disqualify himself from ruling on that motion.

Kelley contends that he did not knowingly and intelligently waive his right to a trial by jury because neither he nor his attorney, Mr. William J. Cintolo, at the time of the waiver knew that Judge Mazzone, almost a year earlier and in another proceeding, had authorized an extension of a wiretap order allowing the government to intercept electronically the conversations of Mr. Cintolo. Kelley also maintains that, in view of the wiretap order, Judge Mazzone should have recused himself from presiding at Kelley's trial, and from ruling on Kelley's motion for a new trial. Since we find that Judge Mazzone acted properly throughout these proceedings, the denial of the motions is affirmed.

On March 4, 1982, in a non-jury trial conducted by Judge Mazzone, defendant-appellant Henry Francis Kelley was found guilty of violating 18 U.S.C. § 922(a)(6) (false statements to a firearms dealer), 18 U.S.C. § 922(h)(1) (receipt of firearm by a convicted felon), and 18 U.S.C. Appendix, § 1201(a)(1) (receipt and possession of a firearm in interstate commerce). Before the trial commenced, Kelley informed the court that he wished to waive his right to be tried by a jury. Judge Mazzone asked Kelley if he had discussed this matter with his attorney, Mr. Cintolo; whether he understood that he had a right to a trial by jury; and if he was waiving that right voluntarily. When Kelley responded affirmatively to all three questions, Judge Mazzone asked him to read, with Mr. Cintolo, a Waiver of Trial by Jury Form, and then to sign the form. After the form was completed and signed, the trial began.

Following his conviction, Kelley was sentenced to a prison term of two years. Execution of sentence was stayed while Kelley filed an appeal in this court, which affirmed the conviction on September 27, 1982. On October 15, 1982, citing medical reasons, Kelley moved the district court for a Stay of Execution of Sentence. The motion was granted by Judge Mazzone. On November 3, 1982, Kelley filed a motion to reduce sentence, which motion was denied by Judge Mazzone. On November 23, 1982, Kelley filed a motion asking the district court to extend the Stay of Execution of Sentence because of his continuing medical problems. Execution of sentence was again stayed by Judge Mazzone until January 10, 1983.[1]

On December 27, 1982, Kelley filed in the district court the motions which form the basis of this appeal. Kelley's Motion to Vacate Judgment and Sentence, and for a New Trial was supported by an affidavit of Mr. Cintolo. The motion to disqualify Judge Mazzone from ruling on the motion for a new trial was supported by an affidavit of Kelley. Concurrent with these motions, Kelley filed another motion to extend the Stay of Execution of Sentence, this time in the interest of justice.

The affidavits submitted to the court indicate that subsequent to Kelley's March 4, 1982 trial, Mr. Cintolo learned that on April

---

* Of the United States Court of International Trade, sitting by designation.

1. On January 4, 1983, Kelley filed a Petition for Writ of Mandamus, and, on January 6, 1983, a Motion for Stay of Execution of Sentence and Notice of Appeal in this Court. We denied Kelley's Petition for a Writ of Mandamus, and removed the Stay on February 7, 1983. Kelley then moved to vacate the Order revoking the Stay which motion we denied on February 14, 1983. Kelley then filed a Petition for Stay of Execution of Sentence with Justice Brennan who denied it on March 9, 1983.

3, 1981, Judge Mazzone had signed an order authorizing an extension of a wiretap on Mr. Cintolo. The order was based on a finding by Judge Mazzone that there was probable cause to believe that Mr. Cintolo was involved in a continuing conspiracy to obstruct justice. Although Mr. Cintolo's affidavit does not state exactly when he learned of the wiretap order, the memorandum submitted in support of Kelley's motion for a new trial stated that Mr. Cintolo knew of the electronic surveillance on or about September 10, 1982.

Two questions are presented on this appeal: 1) whether Kelley made a knowing and intelligent waiver of his right to a trial by jury; and 2) whether Judge Mazzone should have recused himself from presiding at Kelley's trial, and from deciding the motion for a new trial. Since we hold that Kelley knowingly and intelligently waived his right to a trial by jury, and that Judge Mazzone was not required to recuse himself, we affirm.

Kelley contends that he is entitled to a new trial because Judge Mazzone's failure to disclose his involvement in the investigation of Mr. Cintolo prevented Kelley from making a knowing and intelligent waiver of his right to a trial by jury. Alternatively, Kelley contends that he is entitled to a new trial because Judge Mazzone did not recuse himself from presiding as the trier of fact at Kelley's trial. Kelley argues that Judge Mazzone's finding in the wiretap order, that there was probable cause to believe that Mr. Cintolo was engaged in criminal conduct, demonstrates Judge Mazzone's bias against Mr. Cintolo, and raises a reasonable doubt about Judge Mazzone's impartiality toward Kelley. Essentially for the same reason, Kelley contends that Judge Mazzone should have disqualified himself from ruling on the motion for a new trial.

In opposition, the appellee contends that Kelley's motions for a new trial and to disqualify Judge Mazzone were untimely, and that the motion to disqualify Judge Mazzone was not supported by a proper or sufficient affidavit of counsel. The appellee further contends that, even if Kelley's motions are deemed properly filed, the denials of the present motions on appeal should be affirmed since Kelley knowingly and intelligently waived his right to a jury trial, and because the facts of this case did not require Judge Mazzone to recuse himself from presiding at Kelley's trial or from ruling on his motion for a new trial.

It must be noted at the outset that there is merit in the appellee's contentions that Kelley's motions were untimely, and that the motion to disqualify Judge Mazzone pursuant to 28 U.S.C. § 144 was technically deficient.

28 U.S.C. § 144 requires that the party filing a motion to disqualify a judge also file a "timely and sufficient" affidavit "not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." Section 144 also requires that the motion "be accompanied by a certificate of counsel of record stating that it is made in good faith."

■ In this case, Kelley's motion to disqualify was not accompanied by a certificate of counsel. Neither did the affidavit filed in support of Kelley's motion for a new trial indicate when Mr. Cintolo discovered the "new evidence" upon which the motion was based.

Appellate counsel for Kelley apparently recognized the deficiency in Mr. Cintolo's affidavit because, in the memorandum submitted in support of the motion for a new trial, counsel stated that on September 10, 1982 Mr. Cintolo learned of Judge Mazzone's involvement in the wiretap investigation. Counsel, however, has made no effort to demonstrate good cause for waiting more than three months before filing the present motions to disqualify and for a new trial.

On September 10, 1982, when Kelley learned of the wiretap order signed by Judge Mazzone, Kelley's first appeal of his conviction was still pending in this court. He did not notify this court of the new evidence. Neither did Kelley notify the district court of the new evidence when he came before it on three different occasions between September 10, 1982, and December 27, 1982, when the present motions were filed. Instead of acting promptly, Kelley allowed Judge Mazzone to rule on three separate motions made after Kelley knew of the grounds alleged for Judge Mazzone's disqualification.

Although the untimeliness and deficiency of Kelley's motion would be sufficient reason to dismiss this appeal, *see In re Union Leader Corp.*, 292 F.2d 381 (1st Cir.1961); *United States v. Kelly*, 519 F.Supp. 1029 (D.Mass.1981), we will nevertheless address the merits of Kelley's motions.

■ It is not questioned that a criminal defendant may waive the right to a jury trial if the waiver is made voluntarily, knowingly and intelligently. *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); Fed.R.Crim.P. 23(a). Kelley contends that his waiver was not knowingly and intelligently made because at the time of the waiver he did not know that, in an unrelated proceeding, Judge Mazzone had found probable cause to believe that Kelley's attorney, Mr. Cintolo, was engaged in criminal activity. The type of information, however, which the defendant must possess in order to make a knowing and intelligent waiver of the right to a jury trial relates to his knowledge of his constitutional rights. *United States v. Conforte*, 457 F.Supp. 641, 660 (D.Nev.1978), *aff'd*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). "To be knowing and intelligent, a waiver of the right to jury trial must be done with an understanding of the 'nature of the right.'" *United States ex rel. Williams v. De Robertis*, 538 F.Supp. 899, 904 (N.D.Ill.1982), *quoting Estrada v. United States*, 457 F.2d 255, 256 (7th Cir.1972).

■ In essence, Kelley claims that his waiver was uninformed because at the time of the waiver he did not know that the judge who would try him, according to Kelley, was biased. In *United States v. Conforte, supra,* the defendants argued that the trial judge was personally biased and prejudiced against them on the basis of certain pre-trial remarks by him and that the "failure to disclose his negative opinions precluded their making a 'knowing and intelligent' waiver of a jury." The court stated in response that:

The error in the defendants' position lies in their assumption that non-disclosure of the judge's personal opinions deprived them of the information necessary to make an informed and intelligent jury waiver. In fact, the type of information required to make a proper jury waiver relates to the defendants' knowledge of

their constitutional rights, not to the judge's innermost thoughts or out-of-court statements. Those are matters adequately treated by sections 144 and 455 of the Judicial Code.

457 F.Supp. at 660. In this case Kelley has similarly confused his right to a trial by jury with his right to have his guilt or innocence determined by an impartial trier of fact.

The same error was made by the defendant in *Wyatt v. United States*, 591 F.2d 260 (4th Cir.1979). In that case, Wyatt did not know at the time of the jury waiver, and the trial judge did not disclose, that the judge had previously presided at the trial of another defendant who had implicated Wyatt in the narcotics trafficking scheme for which Wyatt was then on trial. In approving the jury waiver, the Court of Appeals for the Fourth Circuit stated:

When ... the circumstances are asserted to relate only to the predilections or special knowledge of the bench trial judge, we think and here hold that if they are not sufficiently grave to require disqualification of the judge ... they could not qualify as circumstances requiring the judge's *sua sponte* reconfirmation of an earlier [jury] waiver.

591 F.2d at 265.

Viewed in the light of judicial authority, Kelley's contention that he did not make a knowing and intelligent waiver of his right to a trial by jury is plainly without merit.

Kelley's reliance on *United States v. David*, 511 F.2d 355 (D.C.Cir.1975), is misplaced. In *David*, holding that the trial court did not adequately question the defendant before permitting him to waive his right to a jury trial, the appellate court ordered a new trial. The defendant in *David*, however, had a substantial psychiatric history. Moreover, in *David* the questions that the trial court did ask elicited responses which indicated that the defendant did not understand either the nature of his right to a trial by jury, or that he was not required to waive the right. 511 F.2d at 362. No similar factors surround Kelley's jury waiver in the present case. Rather, Kelley unequivocally assured Judge Mazzone that he understood the nature of his right to a jury trial and that he was waiving that right voluntarily. Further-

more, on this appeal, Kelley does not contend that his jury waiver was involuntary or that he did not understand the nature of his right to a trial by jury. It is clear, therefore, that Kelley's waiver of his right to a trial by jury was valid. If Kelley is to obtain a new trial in this case, it can only be because, under the circumstances, Judge Mazzone was required to recuse himself and did not do so.

28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 455 provides in pertinent part:

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party . . . ;

\*     \*     \*     \*     \*     \*

When an affidavit of personal bias or prejudice is filed pursuant to section 144, a trial judge is not required immediately to recuse himself. *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *United States v. Garramone,* 374 F.Supp. 256, 258 (E.D.Pa.1974). Although the trial judge may not pass on the truth of the matters asserted, *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Bell v. Chandler,* 569 F.2d 556 (10th Cir.1978); *Davis, supra,* 517 F.2d at

1051, the trial judge must pass upon the legal sufficiency of the affidavit. *Davis, supra,* 517 F.2d at 1051; *United States v. Garramone, supra,* 374 F.Supp. at 258. Since sections 144 and 455 of 28 U.S.C. use similar language, and are intended to govern the same area of conduct, they have been construed *in pari materia,* and the test of the legal sufficiency of a motion for disqualification is the same under both statutes. *See In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 965 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980); *United States v. Carignan,* 600 F.2d 762, 764 (9th Cir.1979); *Davis, supra,* 517 F.2d at 1052; *United States v. Conforte, supra,* 457 F.Supp. at 657.

In this case, Kelley maintains that Judge Mazzone's finding, in an earlier and unrelated proceeding, that there was probable cause to believe that Kelley's attorney, Mr. Cintolo, was engaged in criminal conduct, raises a reasonable doubt about Judge Mazzone's impartiality towards Kelley. We disagree.

Under sections 144 and 455(a) and (b)(1), there are two possible grounds for a judge's disqualification: (1) the judge's impartiality may reasonably be questioned; or (2) the judge may have a personal bias or prejudice concerning a party. *United States v. Mirkin,* 649 F.2d 78, 81 (1st Cir. 1981); *Union Independiente De Empleados De Servicios Legales v. Puerto Rico Legal Services, Inc.,* 550 F.Supp. 1109, 1111 (D.P. R.1982). To require disqualification, the alleged bias or prejudice must be both "(1) personal, i.e., directed against a party, and (2) extrajudicial." *United States v. Carignan,* 600 F.2d 762, 763 (9th Cir.1979). Facts learned by a judge while acting in his judicial capacity cannot serve as a basis for disqualification on account of personal bias. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921); *United States v. Mirkin, supra,* 649 F.2d at 81; *Union Independiente, supra,* 550 F.Supp. at 1111.

The knowledge which Kelley contends required Judge Mazzone to recuse himself was indisputably obtained by Judge Mazzone during the performance of his judicial duties. Therefore, it cannot serve as

a basis for disqualifying Judge Mazzone on grounds of personal bias. Consequently, the only question is whether, under section 455(a), Judge Mazzone's impartiality might reasonably be questioned.

The test to determine whether a judge should be disqualified for alleged partiality was articulated by this court in *United States v. Cowden,* 545 F.2d 257 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). In *Cowden* it was stated: "The proper test . . . is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man." 545 F.2d at 265.

Guided by this standard, we hold that the facts alleged in this case would not create, in the mind of a reasonable person, a reasonable doubt concerning Judge Mazzone's impartiality toward Kelley.

Kelley asserts that Judge Mazzone's essentially adverse ruling in a prior proceeding involving Mr. Cintolo creates a reasonable doubt about Judge Mazzone's impartiality in this subsequent proceeding in which Mr. Cintolo appeared as his counsel. However, it has been held that even when a judge has made a negative determination regarding a party's credibility in a prior proceeding, the judge is not required to recuse himself from presiding at a subsequent proceeding involving the same party. *United States v. Mirkin,* 649 F.2d 78 (1st Cir.1981). In *United States v. Garramone,* 374 F.Supp. 256 (E.D.Pa.1974), a judge was not required to recuse himself from presiding at the trial of four defendants even though he had earlier authorized the electronic surveillance of one of the defendants.

These precedents hold that a judge's prior adverse ruling against a *party* does not create a reasonable doubt about the judge's impartiality so as to require recusal at a subsequent proceeding involving the same party. Surely, therefore, it cannot be said that a prior ruling adverse to a defendant's counsel requires the judge to recuse himself from presiding at the defendant's subsequent trial.

There may indeed be instances when a judge's attitude toward a particular attorney is so "virulent" that the judge's impartiality concerning the attorney's client might reasonably be questioned. *See Bell v. Chandler,* 569 F.2d 556, 559 (10th Cir. 1978); *Davis v. Board of School Commissioners of Mobile County, supra,* 517 F.2d at 1050–52; *United States v. Ritter,* 540 F.2d 459 (10th Cir.), *cert. denied,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). Kelley has not made such an allegation in this case. Mr. Cintolo was merely the subject of a judicial decision rendered by Judge Mazzone in another proceeding. Thus, there are no facts in this case which would distinguish it from those cases which have held that a judge's prior adverse ruling involving a party's attorney does not create a reasonable doubt about the judge's impartiality in a later proceeding in which the attorney appears as counsel for one of the parties. *See United States v. Cook,* 400 F.2d 877 (4th Cir.1968), *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969) (judge who sat on disciplinary hearing for an attorney's unethical conduct was not required to recuse himself in a subsequent bank robbery trial of the attorney's client).

A case similar to the one at bar is *Union Independiente De Empleados De Servicios Legales v. Puerto Rico Legal Services, Inc.,* 550 F.Supp. 1109 (D.P.R.1982). There the trial judge declined to recuse himself even though, in another proceeding, he had signed an order permitting the electronic surveillance of a law firm in which the plaintiff's attorney was a partner. The court stated:

The answer to plaintiff's allegations is that a judge's having granted an order of interception of the communications of the law firm . . ., without more, is not a reasonable basis for questioning his impartiality toward plaintiff or its attorney. Defendant [sic] has not cited, nor has this Court, nor the District Court of Pennsylvania in *United States v. Garramone,* 374 F.Supp. 256 (E.D.Pa.1974), been able to discover one case in which a judge was precluded or disqualified from participating in the trial of the case because he had signed an order authorizing the interception of wire communications. Even less so when the judge is asked to be disqualified from participating in the trial of an

action ... which is not even remotely related with the authorization of the electronic surveillance.

550 F.Supp. at 1111.

In the present case the connection between the wiretap order and Kelley's trial for firearms violations is too tenuous, and the proceedings are too remote, to create a reasonable doubt about Judge Mazzone's impartiality toward Kelley. Hence, it was not error for Judge Mazzone to sit as the trier of fact at Kelley's trial, nor did he err in refusing to disqualify himself from ruling on Kelley's motion to vacate judgment and sentence, and for a new trial.

Quite apart from the untimeliness and deficiency of Kelley's motions, we hold that Kelley knowingly, intelligently and voluntarily waived his right to a trial by jury, and that Judge Mazzone was not required to recuse himself from presiding at Kelley's trial, or to disqualify himself from ruling on Kelley's motion to vacate judgment and sentence, and for a new trial. Consequently, we affirm.